Again, welcome to the court, and I look forward to serving with you and serving as your colleague in the years ahead. And Judge Newsom and I are delighted to welcome Judge Wood back to the Eleventh Circuit, and I say back because Judge Wood sits with us from time to time. She hails from the Southern District of Georgia, where she previously served as Chief Judge. And we'll probably agree about a lot of things this week, but one thing in particular that we probably will not agree about is who's going to be victorious in the Notre Dame-Georgia football game next month. So welcome back, Judge Wood. We have four appeals that are scheduled for oral argument this morning, and the first is the United States of America v. Rick Lee Evans. And I see Ms. Oswald is here for the appellant. Mr. Christian is here for the government. Ms. Oswald, are you ready to proceed? I am, Your Honor. You may. Thank you. May it please the Court. The heart of this case is really whether Mr. Evans received a fair trial, and that was he able to present his defense to the jury. So I want to take a moment to outline what that theory of defense was. The core of it was that his accuser, who was the government's, you know, primary evidence against him, was an unreliable witness. And there were three basic components to that. First, her age when the alleged abuse occurred. She was four or five. And the time that passed between that abuse and the time of trial, which is about eight years. Well, you don't have a sufficiency of the evidence issue in your brief. That's correct. You're alleging that the indictment was insufficient because it failed to comply with Rule 7? Correct. Okay. Why don't you tell us why that indictment was insufficient? Well, the indictment was insufficient because it failed to allege a factual basis of the offense. So it basically tracked the language of the statute. And the cases of both the Supreme Court and this Court have made clear that the allegations have got to contain some factual matter in order to be sufficient. So what more factual detail do you think was necessary? Here, there was a date range. There was a range for the age of the child, some specificity about the nature of the offense. What more do you think was required? Well, I disagree that there was specificity about the nature of the offense. Other than that, there was statutory language that indicated which portion of the statute that the government was proceeding under. But don't you think that statute itself provides some detail? I mean, not to put too fine a point on it, but direct genital touching underneath the underwear or something? I mean, that's pretty specific. Well, it's the definition of what sexual contact entails. But, for example, in this case, in the discovery and at the trial, there were multiple different allegations of what the nature of the sexual touching was that occurred. And so, you know, the indictment failed to narrow down for the defense, you know, what was the actual offense that the government was alleging. But as far as the language of the indictment goes, on page 20 of your brief, you say it does nothing other than track the statutory language. You said it gives no detail about the date or the activities that were involved. I find it difficult to line up what was actually used in the indictment in your contention on page 20. In fact, weren't there some date parameters that aren't included in the language of the statute? And weren't there some conduct independent of what's in the statute? Well, there was a 19-month day range, which is very broad. And does that 19-month correspond roughly with when the child lived with Mr. Evans? It did. It did. But he was also working for a portion of that time in a child development center. And there was no named victim of the offense. And so when you have no named victim, you know, it's not possible to tell what exactly is the offense that the government presented to the grand jury that occurred. Was there some discovery that took place after the indictment before the trial? There was. But... So he knew who the victim was. He knew. Right? Well, we did not know what was presented to the grand jury as a victim. We certainly knew by the time we got to trial what the government was going to present. But if the purpose of the indictment is to bind the government to the offense that was alleged before the grand jury, then the indictment has got to specify what that offense was. And so there is no way to know if the offense that was presented to the grand jury was the same offense that was proved at trial. And so... So on these facts, what would have been sufficient in your mind? What more? Well, I don't think that there is a bright line rule to say what is sufficient and what is not. But naming a victim certainly would have helped. Being more specific about the date range certainly would have helped. Being more specific about what the sexual contact was, when it occurred, where it occurred, certainly would have helped. But we have none of that in this indictment. You seem to suggest, by reference to civil cases such as Iqbal and so forth, interpreting Rule 8 of the civil rules, that somehow that law should be injected into Rule 7 of criminal rules of procedure and that we need to hold the government to some sort of Iqbal standard. Is that your contention? My contention is that the standards are very similar. If you look at the two rules, the rule in the criminal procedure requires a factual basis for the offense. The case law requires factual allegations, not just conclusory allegations drawn from the language of the statute. And so my point in the brief is that they are very, very similar and that this indictment does not match, does not meet that standard. Why did you need the therapist notes? So a core part of our theory of defense was that the victim or alleged victim had been over the course of eight years, which makes it more likely that she was projecting a sexual experience onto Mr. Evans that he did not commit. So that's something... Well, the government says this was just a phishing expedition. Don't you have to have some basis to suggest that the victim's memory was contaminated by the passage of time and the power of suggestion before you get the therapist notes? And if so, and I think you have to have that, what was the basis for it? We did have that in this case. We had two experts who examined the interviews and found evidence of suggestive techniques. So the first expert was actually a prosecution expert from Germany, Dr. Otto Lotz, and she examined the first two interviews. Yeah, none of these experts ever examined the victim, right? So how would they know that? Well, what they examine is the record, the transcripts and the video of her interviews, her forensic interviews. So what they look at is the way that she disclosed, the way that the people who were involved in the abuse changed, the way that core factual details of her account changed from one interview to the next, and also the way that she was questioned. So in the first and second interviews, Dr. Otto Lotz notes that, and also Dr. Esplin notes that there was, instead of an open-ended exploration of what happened and who was involved, there were specific questions about Mr. Evans, which tends to suggest to the child that she needs to give information about Mr. Evans. And why, just sort of jumping ahead a bit, why is it that these notes aren't privileged? Well, in our view, the controlling case is still the 11th Circuit case, Lindstrom. But doesn't Lindstrom say in footnote nine, there's no privilege issue in this case? Well, but it also weighs, it weighs that confidentiality interest against the due process rights and the interests of the defendant in presenting evidence. So you're saying that the privilege was waived because the victim testified, right? Because she testified that she relied on her therapist to set up her testimony. Correct. But to go back to Judge Newsom's question, I would also like to point out that the federal rule of evidence on privilege does say that the privileges are developed under the common law, but subject to the Constitution. So there is a carve-out there for constitutional principles, such as the right to due process, such as the right to get defense evidence, you know, that has got to be examined. That wasn't at issue in Jaffe, which is the Supreme Court case where the Supreme Court first recognized a civil, a privilege in a civil case. Was the psychotherapist, as I understand it, the prosecution didn't intend to call the psychotherapist during the trial, is that correct? That's correct. So let's say, even assuming, for the purpose of this question, relevance, and even assuming for the purpose of this question, the specificity, give me your admissibility chain. When we don't have the psychotherapist testifying, how is that admissible? Well, the first point of admissibility is evidence of the number of times that she was able to recall memories of sexual abuse. And so that is not being offered for the truth of what the allegations were. But Dr. Esplin testified, or in his report, and I believe he also testified to this, that the number of times matters. And in fact, in some jurisdictions, a forensic interview is only allowed to be conducted once because of the risk of contamination in young children. And it's self-authenticating? How do the notes come out? Well, we, I mean, had the records, had we been able to subpoena the records, we could have subpoenaed a records custodian and brought them in as business records, possibly. I mean, I think, actually, they're not hearsay, so we wouldn't have needed to meet a hearsay exception. But we would have to lay foundation for what they were, which we could have done by calling the records custodian or the psychotherapist herself. We could have called her had we had the records. And was that your, is that your theory, you would have called her? Correct. For the point of admitting the records. All right. You've reserved some time for a verbal argument. Ms. Oswald, we'll hear from the government. Mr. Krishna. Thank you, Your Honor, and may it please the Court. I'm going to begin with the indictment issue and then continue to the therapist notes with this Court's permission. So with respect to the indictment, I think the fundamental flaw with Mr. Evans' argument is that he creates this false dichotomy between, on the one hand, alleging concrete facts and on the other hand, alleging the statutory elements. In this case, the statute at issue here describes the physical conduct that we were going to see in that trial in great detail. Now as for these other elements that... Well, it just, it only charges him with one singular act of child abuse, right? That's correct. Between May of 2007 and December of 2008, that's over a year. Could he be charged with another incident within those same dates? Because the evidence is that he molested her several times. What about one of the other times? Could he be charged with aggravated child abuse for one of those other events? No, he couldn't. He would enjoy double jeopardy protection because he'd be entitled to the record in this case. How does he know which one he's being, which act he's being charged with? He doesn't, he knows only that there is an intentional touching. We don't have to specify the date and it wouldn't have been possible in this case when we're living with the abuser for 18 months. It's not. The indictment says that he's charged with molesting another person. So if he's a pedophile, conceptually he might have molested other little kids as well. How does he know from this indictment which kid it is? If we give the indictment a common sense construction, the date range maps exactly to the time period I understand that, but what if he molested other little kids during this year period of time? If he's a pedophile, how does he know which kid it is by looking at this indictment? Well, he's not, the identity of the victim isn't an element of the offense. If he suspects that we performed a bait and switch between the grand jury and the trial. He's not entitled to know which kid he molested? He learns that through criminal discovery and that's what was provided and indeed, it's important to realize here, there's actually a statute, 18 U.S.C. 3509D, which prohibits the government from naming the victims of child sex abuse in public filings. Well, he could have used initials or something more specific than another person, all right? It doesn't even say where it took place. We don't know. It took place on a military base in Heidelberg, Germany. You could have put that in the indictment. We don't even know whether it took place in Germany or the United States looking at this indictment. The indictment alleges that the conduct occurred outside the United States in the general- You could have put in there on a military base in Heidelberg, Germany and that would have been a little more specific. I don't- Written statement? Yes. That protects you so that you know that you're protected if you make a claim for double jeopardy in the future? Right. But double jeopardy doesn't look only at the indictment. It also looks at the criminal discovery and it looks at the record and it looks at the trial. We know who the victim is. We know that we're talking about the same person who was living with the abuser at this time. And also, I agree that the indictment could have listed Heidelberg, Germany, but that doesn't make it a violation of Rule 7c. The indictment also places Mr. Evans in Heidelberg, Germany from May of 2007 to July of 2009. Where does it say that? That's in the general allegations section of the indictment where it explains how he was an enlisted soldier and then for a period of time he was accompanying another member of the armed forces because that provides the jurisdictional hook for this prosecution. And Count 1, the aggravated sexual abuse count, incorporates those general allegations expressly. You've probably seen many of these. Is this indictment a fairly standard indictment for this sort of crime? I mean, does this one look like the others, I guess? I have seen indictments that look like this. I think as a practice in our office, we do generally try to put initials or perhaps specify the age or perhaps be more specific about location. But none of those, first of all, none of those facts go to the elements of the offense. And all of those facts can easily be remedied with discovery. In the reply brief, Mr. Evans says that we don't have the benefit of discovering the In United States v. Bailey at 778 F. 3rd 1198 1201, this is a 2015 case in which this court recognized that the full record can be used to overcome any notice or double jeopardy insufficiencies. And there was simply no actual surprise here. And that's always the linchpin of any challenge to the sufficiency of the indictment. Mr. Evans knew who we were talking about, and he knew what we were accusing him of doing. There was no surprise on that score, and it's difficult to see what he would have done differently at trial if this indictment had been written differently. Now as for the question about the therapist notes, I think it's important to recognize here that their central argument focuses on how important these notes would have been to make a suggestive questioning defense. But that is a very common defense in these child sex abuse cases. So they're essentially arguing that these notes are fair game whenever we have a child victim. And because... We don't really know what was in those notes. Nobody saw the notes, right? The therapist notes? We don't. We don't even know if the notes exist. What if the notes supported his defense? What if the therapist, I mean, says, look, this is how you need to testify when you go to the trial. And let me refresh your recollection. What if that was in there? Then that would have been some relevant to his defense, and he may have been entitled to that, right? Well, first putting aside the privilege issue, I'd have two responses. I still... Setting aside the privilege issue, because the privilege may be waived if the victim testified and, you know, there was some testimony about the therapist and the relevant notes. But let's set that aside. What if there was something in those therapist notes? No one saw those therapist notes that would support his defense such that it was not a phishing expedition. The question is... Would they have been entitled to it then? No, because it doesn't matter on an ex post analysis of what actually is in the notes. What matters is, did the district court abuse its discretion in looking at this motion and saying, does this make a case that if I grant them the relief and if I give them the subpoena? Because their subpoena, it asks for any and all notes relating to allegations of sexual abuse. It is not targeted to evidence of suggestive questioning. The district court found that it wasn't relevant, right? That was the specific ground given. How can we say that notes about sexual abuse are not relevant in a trial about sexual abuse? Because... Well, I take slight issue because I think the district court ruled on specificity, admissibility and relevance, all three. And we can say that... Right now, we're looking at the relevance part. And so, as I said, the district court found that these are not relevant. And so again, the question is, why are notes about sexual abuse not relevant in a case about sexual abuse? Because the relevance here is solely about suggestive questioning. That's the purpose that they want to use these notes for. So the question is, is there evidence that Allison Davis or Patricia Evans, the two therapists whose notes Mr. Evans wants, what is the evidence that those two individuals engaged in suggestive questioning? Now... And I guess what I'm concerned about is, what if there's something in those notes that supports that allegation? We don't know that, do we? I think we... Let me... I think we do know that there isn't. And I'll explain why. First, the basis of their suspicion is the inconsistencies in the two forensic interviews that we have in 2009. There's no evidence in the record that Allison Davis even saw the victim during that time period. In 2009, November 2009, that's when the victim first names Mr. Evans and accuses him of exactly the conduct that's captured in this indictment. There's nothing in the record to show that Allison Davis, who is the victim's therapist in Texas, met with the victim. At that time, I believe the victim was in Missouri. So we can rule out Allison Davis right there. As for Patricia Evans, she saw the victim in Missouri in between the two interviews. She met with an Army investigator. She told the Army investigator, all I've heard from the victim is that she describes herself as Mr. Rick's girlfriend and that they watched adult movies together. And she... Ms. Evans said that, if I hear any more allegations of abuse, I will let you know. And there's nothing in the record to say that she ever did hear these additional allegations of abuse. And... What if... Couldn't... Is there any reason why the court could not have conducted an in-camera inspection of the notes before deciding they're not relevant? There are two reasons. First, with respect to Rule 17C, the reason for the specificity is that we don't want the world at large, all of these third parties who have nothing to do with this case, to produce notes. And even if the defendant himself never gets them, the third party is still aggrieved by producing them and giving them to the court. More fundamentally, this information is privileged, and the privilege is diminished even if a federal judge looks at these notes. The Jaffe case makes this clear because it emphasizes that the value of these notes is... The reason that it's important to protect this privilege is that the mental health of our citizenry is a public good of transcendental importance. And certainly for victims like we have here, child victims of sexual abuse, that interest is at its apex. And Jaffe says that one of the reasons we don't engage in a case-by-case analysis, we're not going to weigh on a case-by-case analysis, figuring out whether or not to waive this privilege, is because then there's such a chilling effect. You're denying the privilege. But hold on. So one is to say that the privilege might be overcome, you know, given the interests on the other side, this is a criminal prosecution, whatever. Then it's a separate question about waiver. So talk to us about waiver and about whether the privilege here might have been waived. Because you're not suggesting that there's no case-by-case analysis of waiver, is there? I mean, surely the privilege can be waived? I think the privilege certainly can be waived, but it was not waived here. A waiver has to be clear and unequivocal. And we're talking about a girl who at the time of the trial was 12 years old. And did she testify to the substance of these conversations at all? Or was it only to something about the logistics of the interviews or whatever? She testified that Allison Davis helped her structure the interviews. I don't believe she testified about the substance of her meetings with Patricia Evans. And for the reasons I've discussed, Allison Davis is not a reasonable source of suggestive questioning since all of the central allegations that we're dealing with were made before the two ever met. And there's no, certainly, I don't think there's a waiver in either case, but there can't possibly be a waiver with respect to Patricia Evans. And with respect to this privilege issue and about weighing the criminal defendant's rights, it's also important to note that what's going to happen here is if you were to recognize a waiver or if you were to not honor the privilege, not to protect it, not only does that mean that child witnesses would be more reluctant to seek therapy, but more fundamentally, for the purposes of the truth-seeking function of the trial, it means that these notes are less likely to exist, either because therapists choose not to take the notes or because victims choose not to confide in their therapists. And so defendants don't actually get the advantage they were seeking. The status quo is maintained as far as their ability to maintain a defense, but the mental health of these victims is now imperiled. Go back to waiver. What effect are you suggesting that her age, 12 in this case, has on her ability to waive? I think a waiver has to be, at the very least, knowing and clear and unequivocal. I don't, I personally don't think, I think she would need a guardian to waive this privilege for her. Her testimony at trial, where there was no warning from the district court about the consequences of her statement, there's no sort of, she had no reason to think that by making this one statement that Allison Davis helped me structure my testimony, I'm now opening the door to having all of my notes. And do you have any cases to suggest to us that she would need the step of having a guardian before she could waive? Not on, I don't right now, but I'm sure I could find, well, I hope I can find some. Can I ask you a quick question, and this will, I'm afraid, will require you to stand up there a little bit longer than your 10 seconds, but I want to give you an opportunity before I ask your opponent as well. So we haven't talked at all about the disks that were seized, and I just have a couple of genuine sort of record questions that are not quite clear to me yet. Can you, with respect to the labels that were on the disks, can you describe for me exactly what those labels say? So it sounds like, in one brief it said that there were, you know, labels that said something like ASS.2, and then the other brief suggests that they also said something about, you know, the such and such, Dell flash drive or something. Is there anything more than that? Is there anything about the contents on the disks? The labels do not identify the contents. They don't say, for example, Rick's adult folder or child pornography. They do identify the sources of that provided the hard drive data, and they also, I believe, have the signature of the Army investigator who received the CDs and the time and the date symbolizing her receipt. But with respect to this child pornography, I think one thing that's critical to note is how little influence this actually has at this trial, because it came in with a limiting instruction. The district court specifically told the jury that they couldn't consider this evidence to conclude that Mr. Evans actually engaged in any form of intentional touching. They could only consider this evidence if, once they decide that this intentional touching occurred, they could figure out what the motive was. And there is abundant, overwhelming evidence of sexual intent if the jury decides to believe our victim. And so, whether or not the child pornography plays a role in this case, the result is the same here. Thank you, counsel. We'll hear again from Ms. Oswald. Thank you. I'd like to first say a little bit about how our defense would have been different had the indictment been more specific. If the indictment alleges a specific offense, that gives us the opportunity to say to the jury, the government has to prove this specific instance of touching. And you have seen evidence that the story of the child has changed over time. She has alleged different things involving different people and different acts. Do you mean, just so I'm clear, your theory of presentation at trial? Correct. So, had you not learned enough during discovery to craft your theory at trial? Here's where the difference lies. Because we did not have a specific offense in the indictment, the jury was free to say, we don't have to find that the offense proven at trial is the same one charged in the indictment. We just can look at all of these allegations and kind of come to a decision about whether we agree that some abuse happened. And that's the prejudice in the indictment, that we can't argue to the jury, look, this is the offense that has to be proven, the one that was charged in the indictment, not some other offense, this offense. And so that makes it more difficult to present our defense at trial. I also want to talk about Allison Davis and why she was important. She was present for the third forensic interview when prosecutors had this child in a room for five hours questioning her, showing her prior statements about this abuse. And so her involvement in coaching the child through this forensic interview and also her trial testimony makes the likelihood that her notes contain evidence of suggestibility great. So I disagree with the government's point about Allison Davis. I also want to make a point about the waiver, which is that we do not require child defendants to have a guardian present to waive their Miranda rights or to waive their constitutional rights. So I don't see, I don't know of any reason why a child should have a guardian present to waive a privilege. But you wouldn't deny that age would be a relevant, if not dispositive, a relevant, highly relevant factor as to the voluntariness of the decision. Correct. I don't disagree that it would be a factor, but I disagree with this rule that there should have been a guardian. Counsel, let me go back as far as what you were saying about the discreet act. And certainly in a perfect world to have that kind of specificity, the defendant touched me right here on May 12th at 212 Mockingbird Lane. And in fact, that can sometimes occur when it's a discreet incident. Somebody picks somebody up after the football game and this happens. But when you have a young child with someone for 18 months, is it ever possible, truly, to have that kind of specificity that you say you must have to adequately prepare for trial? It is. I think my point would be the government has to decide which version of her story is the I rely on this, well, she made one allegation this month, she made a different allegation the next month, and it doesn't matter which one is true as long as we think something happened. And I don't think the difficulty of adhering to the rules should change the rules. So I don't think that we, that Mr. Evans should be entitled to less process and less rights just because it's difficult for the government to make their case. I think the government should be held to the same standard in this case as they would in a fraud case or in any other kind of case. With reference to the rules, does Rule 7 or any of the cases interpreting it mandate that a particular name be placed in the indictment? No, there's not a mandate. I will say I've never seen an indictment that doesn't have initials or some kind of allegation about who, identification of who the victim was. It does say that there's got to be factual allegations, a statement of the essential facts that constitute the offense, and that's missing in this case. With regard to the confrontation clause issue, you know, the stuff that was taken off of his computer, is there any reason why we couldn't apply a harmless error analysis to that issue? He's not charged with possession of child pornography, right? He's charged with molesting, molesting a child. So the child testified on the stand and that ought to be enough to convict him if the indictment is sufficient. Well, it is the government's burden to prove in the harmless error analysis that there was no effect on the verdict. And to introduce inappropriately evidence that Mr. Evans possessed three images of child pornography out of 12,000 images that was on his computer, and not letting us cross-examine on those 12,000 other images because we didn't have the actual analyst there, that is highly prejudicial. So when you say you didn't have the actual analyst, this is another genuine question that I have. What is it exactly that these programs, the NCASE and the FTK, if I've got that right, what is it that those spit out? What's the data? What do we see on the piece of paper? So I'm taking this from Brid Board's testimony. And my understanding is that there were thumbnail images, some which came accompanied by metadata and some which were not, that it contained information about file structure, folder structure with regard to some of the images. And so as I understand it, it was a narrative report written by a German analyst accompanied by this data that they had pulled using FTK and NCASE and extracted and then copied and put onto a disk. They didn't copy the entire report, just portions of the report and put it on the disk. So for some reason, it was my impression that the government had narrative explanations from German analysts, but that they opted not to put on and instead put Brid Board on to provide his own in-court narrative explanation. Is that not right? That was the government's theory about what happened. Our theory is that's essentially a fiction because what you have is not, this is not a case where Brid Board could retest the evidence because the original evidence had been destroyed did not exist. And so he was taking the results that the German analyst had come up with using FTK and NCASE and then sort of backtracking and testifying about what he believed was done to get that evidence, but without actually knowing. But you agree that there were evidence of narrative explanations provided of the NCASE and FTK by the German analyst that was not introduced? It was, no, none of the reports were introduced. Got it. Okay. Thank you, counsel. Thank you.